THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* DOUGLAS PACKING COMPANY, INC., Appellant.

Vinegar — provisions of Agricultural Law relating to the manufacture and sale of apple cider vinegar construed and applied — vinegar made from evaporated apples is apple cider vinegar within meaning of the statute.

Under the Agricultural Law (Cons. Laws, ch. 1, §§ 70, 71, 72, amd. L. 1916, ch. 125), properly construed, vinegar made from evaporated apples, by treating them with a certain percentage of water squeezed out again as apple juice, is " apple cider vinegar " within the meaning of the statute, and, therefore, defendant, who had made vinegar in this way and offered it for sale branded as " apple cider vinegar," is not liable under the statute for improperly branding vinegar. (*People* v. *Niagara Fruit Co.*, 75 App. Div. 11; affd., 173 N. Y. 629, distinguished.)

*People* v. *Douglas Packing Co., Inc.*, 206 App. Div. 645, reversed.

(Argued March 22, 1923; decided April 24, 1923.)

APPEAL from a judgment, entered March 12, 1923, upon an order of the Appellate Division of the Supreme Court in the fourth judicial department, overruling defendant's exceptions, ordered to be heard in the first instance by the Appellate Division, denying a motion for a new trial and directing judgment in favor of plaintiff upon the verdict directed at the trial court.

*Arthur E. Sutherland* for appellant. The statute requires that vinegar shall be designated with the name of the substance or substances from which it is derived. (L. 1909, ch. 210, amd. L. 1916, ch. 125; L. 1922, ch. 136.) This statute should be strictly construed against the state, and liberally in favor of the citizen who is making a wholesome food product. (*People* v. *Briggs,* 193 N. Y. 459; *Tower & Sons* v. *United States,* 40 Treas. Dec.) The undisputed fact that for a long term of years vinegar known to be made from evaporated apples was marketed in large quantities throughout the country as " apple cider vinegar " without any attempt to prevent it by the public authorities, shows a practical construction of the statute which " is entitled to great, if not controlling influence." (*City of New York* v. *N. Y. City R. R. Co.,* 192 N. Y. 543; *People ex rel. Werner* v. *Prendergast,* 206 N. Y. 411; *Grimmer* v. *Tenement House Dept.,* 205 N. Y. 540; *Holy Trinity Church* v. *United States,* 143 U. S. 457.)

*Carl Sherman, Attorney-General* (*Henry P. Nevins* and *T. Paul McGannon* of counsel), for respondent. The vinegar sold by the defendant was not apple cider vinegar made from selected apples. (Cons. Laws, ch. 1, § 70; *Comm.* v. *Boston W. C. Milk Co.,* 209 Mass. 30; *People* v. *Niagara Fruit Co.,* 75 App. Div. 11; 173 N. Y. 629; *People* v. *Girard,* 145 N. Y. 105.) The statute charged to have been violated by this defendant needs no strained construction nor did the trial court give this statute a strained construction. (*U. S.* v. *Lexington Mill Co.,* 232 U. S. 399; *U. S.* v. *Antikamnia Co.,* 231 U. S. 654; *People* v. *Girard,* 145 N. Y. 105; *People* v. *Niagara Fruit Co.,* 173 N. Y. 629; *People* v. *Butler,* 134 App. Div. 151; *Comm.* v. *Burtnett,* 58 Penn. Super. Ct. 604.) The inferred construction placed on criminal or penal statutes by administrative officers, however long continued, has no force or effect in determining the true

construction that should be placed upon such statutes by the court. (*People* v. *Girard,* 145 N. Y. 105.) The statute deals not only with the standards of the finished product but with the raw material from which the product is made. (*People* v. *Koster,* 121 App. Div. 852; *People* v. *Heinz,* 90 App. Div. 408.)

*William W. Armstrong* for American Cider and Vinegar Manufacturers Association, *amicus curiæ.*

*Judson Harmon, amicus curiæ.*

CRANE, J. This is an appeal from a judgment recovered in the Supreme Court for a penalty of $50 and costs in favor of the plaintiff and against the defendant, based upon a finding that the defendant had improperly branded vinegar in violation of the Agricultural Law. Sections 70, 71 and 72 of the Agricultural Law [Cons. Laws, ch. 1, as amended by L. 1916, ch. 125] read as follows:

" § 70. Definition of vinegars and adulterated vinegars. All vinegars made by fermentation without distillation must carry in solution the extractive matter derived exclusively from the substances from which they were fermented. The terms ' cider vinegar,' ' apple vinegar ' shall be construed to mean the product made exclusively from the pressed juice of apples by alcoholic and subsequent acetous fermentations, the acidity, solids and ash of which have been derived exclusively from the apples from which it was fermented.

" The term ' sugar vinegar ' shall be construed to mean the product made by the alcoholic and subsequent acetous fermentations of solutions of sugar, syrup, molasses or refiner's syrup.

" The term ' malt vinegar ' shall be construed to mean the product made by the alcoholic and subsequent acetous fermentations of an infusion of barley malt.

" The term ' wine vinegar,' ' grape vinegar,' shall be

construed to mean the product made by the alcoholic and subsequent acetous fermentations of the juice of grapes.

" The term ' glucose vinegar ' shall be construed to mean the product made by the alcoholic and subsequent acetous fermentations of solutions of corn-sugar or glucose.

" The terms ' spirit vinegar,' ' distilled vinegar,' ' grain vinegar ' shall be construed to mean the product made by the acetous fermentations of dilute distilled alcohol.

"All vinegars which contain any added drugs, acids, coloring matter or ingredients not derived exclusively from the substances from which they were respectively made, or which shall contain less than four grams of acetic acid in one hundred cubic centimeters of the vinegar at twenty degrees centigrade, shall be deemed adulterated. Nothing herein shall be deemed to prohibit the manufacture of vinegar for consumption elsewhere than within this state, of such acid content as may be elsewhere required.

" The product made by the destructive distillation of wood, known as pyroligneous acid, or acetic acid derived from other sources, than fruit, grain, vegetables, sugar or syrups shall not be sold, offered, exposed or had in possession for sale, for food.

" Mixtures of two or more of the vinegars herein defined are compounds, and the packages containing the same shall be plainly marked or branded with the word ' compound ' together with the proportions of the vinegars so mixed in addition to the other requirements of section seventy-two of this article.

" Packages containing vinegars made from wine or fruits which have been reduced with water must be plainly marked or branded ' reduced to * * * per centum acid strength ' indicating the acidity to which they have been so reduced, or words equivalent thereto."

" § 71. Manufacture and sale of adulterated or imitation

vinegar prohibited.    No person, firm or corporation shall manufacture, sell, offer, expose or have in possession for sale in this state:

" 1. Any vinegar defined herein not in compliance herewith.

" 2. Any adulterated vinegar.

" 3. Any vinegar or product in imitation of cider or apple vinegar which is not cider or apple vinegar.

" 4. As or for cider or apple vinegar any vinegar or product which is not cider or apple vinegar."

" § 72. Packages containing vinegar to be branded.— Every manufacturer or producer of vinegar shall plainly brand each cask, barrel, or other container of such vinegar with his name and place of business, the kind of vinegar contained therein and the substance or substances from which it was made. And no person shall mark or brand as or for cider or apple vinegar any package containing that which is not cider or apple vinegar. Every person who sells any vinegar other than pure cider or apple vinegar, except it be delivered to the purchaser in the unbroken package in which such seller received it, shall plainly and conspicuously mark or brand the receptacle or container in which such vinegar is delivered to the purchaser, whether such receptacle or container be furnished by the seller or purchaser, with a label showing the kind of vinegar so delivered and the substance or substances from which it was made. Nothing herein shall be deemed to prohibit the sale of cider vinegar stock, provided it be sold as and for such and in compliance with the provisions of this article as to marking or branding. The term ' cider vinegar stock ' when used herein, shall be construed to mean acetified apple juice of less acidity than that required for vinegar which contains sufficient alcohol to develop the acidity required in vinegar."

The case against the defendant is based upon a concession reading as follows:

" It is admitted that on or about September, 1920, for

a valuable consideration, the Douglas Packing Company sold and delivered to one William H. Dunne, a domestic corporation dealing in groceries, in Norwich, New York, eighty barrels of vinegar, a part of which eighty barrels was manufactured from apples purchased by the Douglas Packing Company in Vermont and Massachusetts and then made into the evaporated, unpared apples designated as ' chops '; and that the sample in question was a part of such consignment."

The question presented is whether vinegar made from evaporated apples is apple vinegar made exclusively from the pressed juice of apples. If it is, the defendant has not violated the law in branding his product as apple cider vinegar.

There is no doubt, in this case, about the vinegar being the sole product of apple juice. Neither is there any claim that the defendant's product has been adulterated or discolored. The People have frankly admitted that this case is not one of adulteration, but one of misbranding. The name or brand " cider vinegar " or " apple vinegar " is said to indicate a process as well as a product, and that these terms signify to the public that fresh apples and not dried or evaporated apples had been used. The People also insist that the words of the statute " made exclusively from pressed juice of apples " mean juice pressed out of apples, no matter how old or in what condition, as they are taken from the tree or ground.

We cannot read this statute as having this narrow limitation. The process adopted by the defendant, in a word, is this: The apples have the water taken out of them by evaporation. In this way they are preserved from rotting. Later they are put in a big vat or tank, water is poured upon them, they are submitted to pressure, and the water comes out at the bottom of the tank in the form of apple juice. The water which was taken out by evaporation is put back in by this process and squeezed out again as apple juice. It is conceded that

the product, by this process, is of the same quality as the juice extracted under pressure from the fresh apple. I need not stop to enter into an analysis given by the witnesses of this apple juice. It is sufficient to say that the apple juice taken from the dried apple is as good as the apple juice taken from the fresh apple, and that it contains no other properties than those found in the apple originally. The point of this case seems to turn on whether or not apple vinegar and apple cider vinegar indicate to the purchaser a particular process of manufacture. The old way of getting the juice from the apple and making cider or apple cider vinegar was simply to squeeze out the juice from the apple. There is nothing in any law which says what kind of apples these shall be. The People claim, as long as the substance be an apple, no matter what its condition, if it be subject to pressure and juice extraction, the product is that *only* which is known as apple cider or, after fermentation, apple cider vinegar.

The defendant's process, as given by the witnesses, is as follows: The chops or apples are carried by automatic conveyors up to a platform; the platform is level with the top of certain receptacles, which are in the nature of tanks or vats, heavy planking being used for the sides of the vats and the bottom and heavy iron bands about it, unusually heavy. When the receptacle has been filled two-thirds or thereabouts full, a quantity of water is added. Immediately after a grating of heavy pieces of wood is put on top of the apples on which a heavy weight is placed. The apples swell when they have reached a certain relation to the top of the tank and while that swelling is still going on a vent in the bottom of the tank is opened and a force of water is applied through a pipe which is inserted from above and when out of that vent in the bottom there has passed the same quantity of liquid that was in those apples in their fresh state, the force of the water at the top automatically shuts off; the vent at the bottom shuts off; and the juice from those

apples has then entirely passed out, leaving nothing but water in the apples.

The method which the People insist upon is to grind the apples into fine particles, place the pulp in cloths, which in turn are placed upon an immovable flat surface underneath a movable surface driven by hydraulic power applied indirectly by means of a screw against the pulp in the cloth in such a manner as to squeeze out the apple juice therefrom. In the ordinary cider and vinegar factory this pomace from the first pressing is then picked apart or broken up and placed in a receptacle. To it then is added substantially one-half of its weight in water. The mass is then permitted to soak for from four to twelve hours, according to the weather, to diffuse the extract out. A second pressing is then taken. The resultant liquid from the first and second pressing being mixed and sold by such manufacturer as apple cider and the vinegar made therefrom as apple cider vinegar.

The juice obtained from the fresh and from the evaporated fruit is treated alike. The chemical transformation and the process and methods of manufacture into apple cider vinegar are identical. To this there is one exception. To prevent discoloration and arrest decomposition the chopped apples in the process of evaporation are subject to a bath in sulphur fumes whereby the evaporated apple carries an entirely harmless quantity of sulphur dioxide beyond that contained naturally in the apple. To remove this additional sulphur dioxide content, the defendant utilizes barium carbonate before fining and filtration and thus eliminates the excess sulphur.

In view of the concession made by the counsel for the People that this sulphur and the chemical agent to remove it in no way adulterate the vinegar or change its substance or quality, and that there is in the vinegar product manufactured by the defendant no foreign substance, this element adds nothing to the People's case. As stated before it is simply one of branding, not of adulteration.

As said before we cannot read the statute of this state, which is above quoted, as giving the meaning to the words " cider vinegar," or " apple vinegar," and " pressed juice of apples," as indicating any particular kind of apples from which the juice is to be pressed. Provided the substance pressed be apples, the product apple juice, and the method of extraction pressure, the law is complied with. This product, when further treated, as required by law, becomes apple vinegar, or apple cider vinegar, and may be so termed. The law does not say or indicate how the pressure shall be applied. When a penalty is to be imposed or a manufacturer is subject to prosecution, it is reasonable to expect that the statute which he is claimed to have violated shall be clear, distinct, understandable and not subject to hidden meaning.

If the legislature had intended in section 70 that the juice should be pressed from a particular kind of apple, or an apple in a particular condition, it would have been a very simple matter to have said " fresh apples " or " not evaporated apples." The process of making vinegar from evaporated apples has been going on for a long time, and must have been known to the persons interested in drafting the Agricultural Law. When, therefore, the legislature made no distinction in the kind of apples to be pressed, it is not for the courts to do it. Neither is it for the courts to try and figure out what the legislature intended or might have intended or should have intended when the intention is not apparent upon the face of the statute. We find no intention to exclude evaporated apples from section 70.

That the legislature had a broader purpose in mind is indicated when we read the entire section.

Section 70 is an attempt to define vinegar and adulterated vinegars. It says vinegars made by fermentation must be derived exclusively from the substance from which they were fermented. Cider vinegar or apple vinegar is the product exclusively from the juice pressed out of

apples, sugar vinegar is the product made from sugar, malt vinegar from barley malt, wine vinegar from the juice of grapes, glucose vinegar from corn sugar or glucose, distilled vinegar or grain vinegar from diluted, distilled alcohol. It is quite clear that the import of this statute is to require that when a thing is termed cider vinegar or apple vinegar it shall be made exclusively from apples or from the juice pressed out of apples. The defendant's product meets this requirement; it is made exclusively from the juice pressed out of apples. The fact that the apples may have been dried apples or evaporated apples or green apples or old apples makes no difference so far as this law enacts.

This vinegar of the defendant and the label under which it was sold, it is conceded, complied with all the other requirements of the law. As heretofore stated, the only complaint made is in the use of the label words " apple cider vinegar." The case of *People* v. *Niagara Fruit Company* (75 App. Div. 11, 12; affd., 173 N. Y. 629) is not in point as in that case coloring matter had been added to the vinegar making an illegal adulteration. It is said by Judge SPRING in his opinion, " the chemical analysis showed that each sample of vinegar was below the standard fixed by the Legislature of the State of New York, in that it contained less than the required quantity of acetic acid, and that it was not the exclusive product of pure apple juice, and that it contained artificial coloring matter which caused a distinct change in appearance."

We are dealing with the interpretation of our statute in the light of the evidence before us, and for the reasons here stated the judgment of the Appellate Division and the Trial Term should be reversed and the complaint dismissed, with costs in all courts.

HISCOCK, Ch. J.; HOGAN, CARDOZO, McLAUGHLIN and ANDREWS, JJ., concur; POUND, J., dissents.

Judgment accordingly.